

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-19-00248-CV

IN THE INTEREST OF B.W., A CHILD

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 90,105-D-FM, Honorable Pamela Cook Sirmon, Presiding

November 12, 2019

MEMORANDUM OPINION

Before QUINN, C.J. and PIRTLE and PARKER, JJ.

Appellant, Mother, appeals the trial court's order terminating her parental rights to her son, B.W.[1] Appointed counsel for Mother has filed an *Anders*[2] brief in support of a motion to withdraw. Finding no arguable grounds for appeal, we affirm the judgment of the trial court.

---

[1] To protect the privacy of the parties involved, we will refer to the appellant as "Mother" and to the child by initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2019); TEX. R. APP. P. 9.8(b). Father's parental rights were also terminated in this proceeding. Father does not appeal.

[2] *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

Factual and Procedural Background

In October of 2017, the Texas Department of Family and Protective Services filed its petition for protection, conservatorship, and termination of parental rights of Mother and Father as to their thirteen-month-old son, B.W. B.W. was removed after the Department received a report in July that Mother and Father were using illegal drugs. There were also concerns of domestic violence in the home. The Department investigator had a difficult time locating Mother and Father because they did not have a permanent residence. Mother was on probation for injury to a child and, during the Department's investigation, Mother tested positive for cocaine after submitting to a drug screen requested by her probation officer. Mother admitted to her probation officer that she used cocaine the day before she reported. The Department requested that Mother and Father submit to a hair follicle drug test. Mother's hair follicle test was positive for cocaine.[3]

The Department developed a family service plan for Mother, and the court ordered compliance with the plan requirements at a status hearing in November. The service plan set out several tasks and services for Mother to complete before reunification with B.W. could occur. These tasks and services included the following: maintain a drug-free lifestyle and abstain from the use of illegal drugs; submit to random drug screens; participate in and complete a substance abuse assessment with Outreach, Screening, Assessment and Referral (OSAR) and follow through with all recommendations; locate and maintain stable housing that is free from drugs and violence; locate and maintain stable employment; participate in and complete parenting classes; complete a

---

[3] Father cut his hair and shaved his beard and armpits to avoid taking the hair follicle drug test.

psychosocial assessment and follow recommendations; attend individual counseling; participate in and complete rational behavior therapy (RBT); participate in an assessment at Texas Panhandle Centers (TPC) and follow recommendations; complete a psychological evaluation and follow recommendations; attend all scheduled parent-child visits with B.W.; and maintain regular contact with her caseworker. The family service plan also informed Mother that its purpose was to assist her in providing a safe environment for B.W. The plan warned Mother that if she was "unwilling or unable to provide [B.W.] with a safe environment, [her] parental . . . rights may be restricted or terminated or [B.W.] may not be returned to [her]."

Mother completed her parenting classes and her initial OSAR assessment, but she did not follow through with the treatment recommendations. Mother failed to maintain a drug-free lifestyle, stable housing, and employment, and she did not attend individual counseling or participate in RBT. Mother also failed to submit to an assessment at TPC or complete her psychosocial evaluation. She visited with B.W. sporadically before she was incarcerated in June of 2018.

The Department produced evidence that Mother received community supervision probation for injury to a child causing serious bodily injury.[4] While on supervision, Mother failed a drug test in September of 2017. Mother subsequently admitted to her probation officer that she snorted cocaine on March 28, May 7, and May 26, 2018, and that prior to March, she had snorted cocaine once a week since the beginning of January 2018. As a result of these admissions, Mother's probation was amended to include a requirement

---

[4] Mother relinquished her parental rights to this child in 2016.

that she complete a cognitive thinking program and a drug program at an Intermediate Sanction Facility (ISF). Mother was incarcerated in the Potter County Jail from June 1 until she was transferred to ISF on August 10.

After her release from ISF on February 7, 2019, Mother resided at the Faith City Mission. Mother left the Faith City Mission program on April 22 with another resident, Wesley Keelin. Mother is engaged to Keelin and they live with his friend Toby in Amarillo. Mother does not know Toby's last name or his address. Mother is unemployed but she is looking for work.

B.W. was placed in a foster home after his removal. B.W. is a happy, healthy toddler, and he enjoys playing with his toys and the other children in the foster home. B.W. likes to have books read to him, and his medical and physical needs are being met in this placement. The Department has no concerns about B.W.'s placement, and the foster home is willing to adopt B.W. if parental rights are terminated. According to the caseworker, appointing the Department as permanent managing conservator pending an adoption by his foster home placement is in the best interest of B.W.

The trial court terminated Mother's parental rights to B.W. on the grounds of endangering conditions, endangerment, previous conviction or community supervision for serious injury to a child, and failure to comply with a court order that established actions necessary to retain custody of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D),

4

(E), (L), (O) (West Supp. 2019).[5] The trial court also found that termination was in the best interest of B.W. *See* § 161.001(b)(2).

Analysis

Pursuant to *Anders*, Mother's court-appointed appellate counsel has filed a brief certifying that she has diligently searched the record and has concluded that the record reflects no arguably reversible error that would support an appeal. *In re Schulman*, 252 S.W.3d 403, 406 n.9 (Tex. Crim. App. 2008) (orig. proceeding); *Porter v. Tex. Dep't of Protective & Regulatory Servs.*, 105 S.W.3d 52, 56 (Tex. App.—Corpus Christi 2003, no pet.) ("[W]hen appointed counsel represents an indigent client in a parental termination appeal and concludes that there are no non-frivolous issues for appeal, counsel may file an *Anders*-type brief"); *In re L.J.*, No. 07-14-00319-CV, 2015 Tex. App. LEXIS 427, at *2-3 (Tex. App.—Amarillo Jan. 15, 2015, no pet.) (mem. op.) (same).

Counsel certifies that she has diligently researched the law applicable to the facts and issues and discusses why, in her professional opinion, the appeal is frivolous. *In re D.A.S.*, 973 S.W.2d 296, 297 (Tex. 1998) (orig. proceeding). Counsel has complied with the requirements of *Anders* by providing a copy of the brief, motion to withdraw, and appellate record to Mother, and notifying her of her right to file a pro se response if she desired to do so. *Id.*; *Kelly v. State*, 436 S.W.3d 313, 319-20 (Tex. Crim. App. 2014); *In re L.V.*, No. 07-15-00315-CV, 2015 Tex. App. LEXIS 11607, at *2-3 (Tex. App.—Amarillo

---

[5] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

Nov. 9, 2015) (order) (per curiam). On September 16, 2019, Mother filed a response to her counsel's *Anders* brief.

Due process requires that termination of parental rights be supported by clear and convincing evidence. *In re E.M.E.*, 234 S.W.3d 71, 72 (Tex. App.—El Paso 2007, no pet.) (citing *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)). This standard falls between the civil preponderance of the evidence standard and the reasonable doubt standard of criminal proceedings. *Id.* at 73. Clear and convincing evidence is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2019). Reviewing the legal sufficiency of the evidence supporting parental termination requires us to review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. In a factual sufficiency review, we are to determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief about the truth of the matter on which the movant bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 28-29 (Tex. 2002); *In re T.B.D.*, 223 S.W.3d 515, 517 (Tex. App.—Amarillo 2006, no pet.).

By her *Anders* brief, counsel concludes that reversible error is not present because sufficient evidence supports termination under subsection (O). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.*, 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.) (only one predicate finding under section 161.001(b)(1) is necessary to support termination when there is also a finding that termination is in a child's best interest). However, in light of the recent Texas Supreme Court opinion in *In re N.G.*, we also review

6

the trial court's findings under section 161.001(b)(1)(D) and (E), because of the potential future consequences to appellant's parental rights concerning a different child. *In re N.G.*, 577 S.W.3d 230, 235-37 (Tex. 2019) (per curiam);[6] *In re M.M.*, No. 07-19-00105-CV, 2019 Tex. App. LEXIS 7505, at *6-7 (Tex. App.—Amarillo Aug. 21, 2019, pet. denied) (mem. op.).

Section 161.001(b)(1)(D) permits termination when clear and convincing evidence shows that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *See* § 161.001(b)(1)(D). Subsection (D) requires a showing that the environment in which the child was placed posed a danger to the child's physical or emotional health, and it permits termination based on a single act or omission by the parent. *In re J.A.S.*, No. 07-12-00150-CV, 2012 Tex. App. LEXIS 8087 at *14 (Tex. App.—Amarillo Sept. 25, 2012, no pet.) (mem. op.). Subsection (D) concerns the child's living environment, rather than the parent's conduct, though parental conduct may produce an endangering environment. *Jordan v. Dossey,* 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). It is not necessary that the child's living environment directly threaten the child or that the child be injured, but the parent must at least be aware of the potential

---

[6] Subsection (b)(1)(M) permits parental rights to be terminated if the parent has "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state." *In re N.G.*, 577 S.W.3d at 234 (quoting section 161.001(b)(1)(M) of the Family Code). Because findings based on subsections (b)(1)(D) or (E) may become "a basis to terminate parent's rights to other children," the Supreme Court reasoned that when a parent presents an appellate issue related to subsections (b)(1)(D) or (E) and the appellate court does not address the issue on appeal, the appellate court "eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children." *Id.* at 235. According to the Supreme Court, "the parent's fundamental liberty interest at stake outweighs the state's interest in deciding only what is necessary for final disposition of the appeal." *Id.* at 237. "Allowing section 161.001(b)(1)(D) or (E) findings to go unreviewed on appeal when the parent has presented the issue to the court thus violates the parent's due process and due course of law rights." *Id.*

for danger to the child in such an environment and must have disregarded that risk. *In re S.M.L.,* 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Illegal drug use and criminal activity support a conclusion that the child's surroundings endanger his or her physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The relevant time frame under this subsection is prior to the child's removal. *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied).

Section 161.001(b)(1)(E) permits termination when clear and convincing evidence shows that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the child's physical or emotional well-being. *See* § 161.001(b)(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission. A voluntary, deliberate, and conscious course of conduct by a parent is required. *Id.* Thus, while both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re S.M.L.*, 171 S.W.3d at 477. To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, nor is the child required to actually suffer injury. *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987).

As in a criminal case, we have independently examined the entire record to determine whether there is a non-frivolous issue that might support the appeal. *See Penson v. Ohio*, 488 U.S. 75, 82-83, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988); *Stafford*

*v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). Based on this record, we conclude that a reasonable factfinder could have formed a firm belief or conviction that grounds for termination existed and that termination of Mother's parental rights was in B.W.'s best interest. *See* § 161.001(b)(1), (2) (West Supp. 2019)*; In re M.M.,* No. 07-19-00105-CV, 2019 Tex. App. LEXIS 7505, at *9. Specifically, we conclude the trial court's findings with respect to subsections (D) and (E) and its finding with respect to the best interest of B.W. were supported by the evidence.

After reviewing the record, the *Anders* brief, and Mother's response, we agree with counsel that there are no plausible grounds for reversal.

Accordingly, the trial court's order terminating Mother's parental rights to B.W. is affirmed.[7]

Judy C. Parker
Justice

---

[7] We call counsel's attention to the continuing duty of representation through the exhaustion of proceedings, which may include the filing of a petition for review. Counsel has filed a motion to withdraw, on which we will take no action. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam).